## HENRIETTA A. RAPP, Appellant, v. GEORGE RAPP, Respondent.

Kansas City Court of Appeals, March 4, 1912.

1. **DIVORCE: Collusion: Alimony.** An agreement between the parties to an action for divorce concerning alimony or a division of their property, is not prohibited by law, and if unaccompanied by an agreement or understanding that one of the parties shall have a divorce, or be unresisted at the trial, is not collusive.

2. ———: ———: ———.  Collusion is a conspiracy of the husband and wife to obtain a decree of divorce by false or manufactured testimony.

3. ———: ———: Connivance.  The distinction between collusion and connivance is that, while collusion is a corrupt agreement, connivance is a corrupt consenting.

Appeal from Cooper Circuit Court.—*Hon. William H. Martin,* Judge.

Reversed and remanded (*with directions*).

*John & Daniel W. Cosgrove* for appellant.

(1)  The evidence adduced at the hearing July, 1910, establishes plaintiff's right to a divorce, and the court should have granted her a decree. Lynch v. Lynch, 87 Mo. App. 32; Ulrey v. Ulrey, 80 Mo. App. 48; Ramey v. Ramey, 128 Mo. App. 167; Morgan v. Morgan, 134 Mo. App. 165.  There was no collusion between the plaintiff and defendant.  Rosenfeld v. Rosenfeld, 67 Mo. App. 29; Shirk v. Shirk, 75 Mo. App. 573; Nelson on Divorce and Separation, secs. 504 and 509.

*W. G. & G. T. Pendleton* for respondent.

The court did not abuse its discretion in continuing the case, after plaintiff's evidence had been introduced, for further hearing, and requiring the defendant to appear at the subsequent hearing with witnesses by whom he had stated he could disprove the plaintiff's charges.  A divorce proceeding is not an action in which only the plaintiff and defendant are interested, but the interest of the public also is involved. Grenzenbach v. Grenzenbach, 118 Mo. App. 280.  Even though the harsh treatment of which plaintiff complains had been actually committed by defendant, still it would not constitute indignities, in view of the plaintiff's dis position to be constantly grumbling, fault finding and

hard to get along with. Holschbach v. Holschbach, 134 Mo. App. 247.

JOHNSON, J.—This is an action for divorce. The petition alleged that defendant had offered plaintiff indignities that rendered her condition intolerable. The answer was a general denial. Afterward plaintiff filed an amended petition alleging certain indignities and defendant filed no answer. When the cause was called for trial, plaintiff appeared and offered evidence in support of her allegations. Defendant did not appear either in person or by attorney. The court interrogated plaintiff and, finding that after the institution of the suit she had made a settlement with defendant concerning alimony, became suspicious, thinking the settlement savored of collusion, had defendant brought into court and subjected him to a searching examination, in the course of which defendant denied the truth of the charges in the petition and asserted that he could produce a number of witnesses to contradict the evidence of plaintiff. The court then ordered defendant to appear at the next term of court prepared to contest the petition and continued the cause. At the succeeding term both parties appeared with their witnesses and after hearing the evidence the court dismissed the bill.

We think the evidence did not warrant the dismissal of the suit on the ground of collusion. There is no ground in the evidence even for a suspicion that the separation of the parties was not in good faith. After the suit was brought their counsel effected a settlement by the terms of which defendant agreed to pay plaintiff $6100, alimony in gross. The parties had been married fourteen yars and when they separated defendant was worth $60,000. At the time of the marriage plaintiff had $854 and she gave the money to defendant after he had threatened if she would not give it to him, to publish a notice to merchants not to ex-

tend credit to her on his account. On the hypothesis that she was the injured and innocent party the settlement gave her little enough. We fail to perceive any good reason for thinking there was a collusive agreement that plaintiff should obtain a divorce or that defendant would not contest the case. Collusion is a conspiracy of the husband and wife to obtain a decree of divorce by false or manufactured testimony. "The distinction between collusion and connivance is that, while collusion is a corrupt agreement, connivance is a corrupt consenting. Both bar the plaintiff upon the theory *volente non fit injuria.*" [Nelson on Divorce, sec. 500.]

An agreement between the parties concerning alimony or a division of their property is not prohibited by law, and if unaccompanied by an agreement or understanding that one of the parties shall have a divorce or be unresisted at the trial, is not collusive. All of the facts and circumstances before us show that the scope of the understanding reached by the parties was confined to the subject of alimony and that defendant's failure to appear at the trial was an act of his own volition, doubtless prompted by consciousness of the justice of his wife's cause. As soon as defendant perceived the disfavor of the court towards plaintiff he was ready enough to appear, and defended the action with the utmost vigor. His entire conduct was that of a husband whose silence had not been purchased but of one who was trying to extricate himself from a bad predicament with as little pecuniary loss as possible and when he discovered a chance to escape without loss, availed himself of the chance regardless of the settlement he had made. We hold there was no collusion.

After making due allowance for the advantage the trial court possessed, from having the parties and witnesses before him, we are convinced that plaintiff was entitled to a decree. Defendant was a widower with

eight small children when plaintiff married him. His first wife was a cousin of plaintiff and on her death-bed expressed the wish that plaintiff would rear her baby then only five months old. On her marriage plaintiff took the place of a kind mother to all the children and was devoted to them. Defendant is rich but miserly. He and his family lived in the most frugal manner. They lived on a farm of over 600 acres owned by him and for fourteen years plaintiff did all the housework, cooking, sewing and general drudgery for that large family, which included the hands employed in working the farm. Occasionally, but not often, she had someone to help her. Defendant allowed her to make purchases for herself and the children but she was so dominated by him that she bought nothing but the barest necessities. She had no decent clothes, could not go to church, had no social life and was treated by defendant without affection and as a servant of low degree. Finally she grew weary and quit. Defendant did not with her to go—he hated to lose so valuable a chattel. Finding her determined to leave him he tried to terrify her by making her think he was going to shoot her. One hardly can imagine a condition more intolerable than that of plaintiff. She was in a state of peonage, a mere drudge, and not a wife. There was no reason for such treatment and the suggestion that it was prompted by the instinct of thrift and economy common to Germans is little less than a slander of that great race. Civilized men do not so treat their wives and certainly the law will class such treatment as an indignity.

The judgment is reversed and the cause remanded with directions to enter a decree of divorce and since both parties, in effect, have repudiated the settlement of alimony, we direct the court to try that issue and adjudge plaintiff suitable alimony.

It is so ordered. All concur.